UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-22690-CIV-HUCK/SIMONTON

LATINO MART & DISCOUNT CORP.,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
### INTRODUCTION

    This action came on for bench trial on February 19, 2008 and February 27, 2008 before the Court, the Honorable Paul C. Huck, District Judge, presiding. The Court heard the testimony of four witnesses, reviewed the exhibits admitted into evidence, and considered the parties' Joint Pretrial Stipulation and their respective Proposed Findings of Fact and Conclusions of law.

    Plaintiff brought this action for judicial review of the validity of an administrative action taken by the United States Department of Agriculture (the "USDA"), disqualifying Plaintiff's store from participating in the Food Stamp Program (the "Program") for a period of six months. Plaintiff invokes the jurisdiction of the Court pursuant to 7 U.S.C. § 2023(13).

    Having considered the evidence and being otherwise fully advised in the premises, the Court hereby enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

### FINDINGS OF FACT

    Plaintiff, Latino Mart & Discount Corp. ("Latino Mart"), is the sole owner and operator of El Morro Supermarket ("El Morro") located at 1139 N.W. 22nd Avenue, Miami, Florida. El Morro is a medium- to small-sized grocery store selling fresh meat and vegetables. Miguel A. Ramirez is the owner, operator, and president of Latino Mart.

    On April 17, 2005 Mr. Ramirez applied for El Morro to participate in the USDA's Food

Stamp Program.[1]  In his application, Mr. Ramirez agreed to follow, and to ensure that his employees follow, the regulations of the Program, agreed to accept responsibility for any violations committed by his employees, agreed that such violations might result in El Morro's disqualification from the Program, and agreed that among such violations was the acceptance of food stamp benefits as payment for nonfood items.  On May 11, 2005 FNS authorized El Morro to participate in the Program.

As part of a routine compliance verification program, FNS conducted an investigation at El Morro in March 2006.  Bryan Leagans, a senior FNS investigator, led the investigation and employed the services of a confidential informant named Terry Thomas.  On Mr. Thomas' first visit to El Morro on March 7, 2006, a cashier accepted $7.79 in food stamp benefits in exchange for merchandise which, in addition to three food items eligible to be purchased using food stamps, included three nonfood items ineligible to be purchased using food stamps (one package of Reynolds Oven Bags, one box of Penley Flat toothpicks, and one package of Mr. Coffee Filters).[2]  On Mr. Thomas' second visit on March 11, 2006, the same cashier accepted $6.62 in food stamp benefits in exchange for merchandise which, in addition to two eligible food items, again included three ineligible nonfood items (one package of Reynolds Oven Bags, one box of Penley Plastic Spoons, and one box of Forster Toothpicks).  On Mr. Thomas' third visit to El Morro on March 13, 2006, the same cashier accepted $5.64 in food stamp benefits in exchange for merchandise which, in addition to one eligible food item, again included three ineligible nonfood items (one package of Reynolds Oven Bags, one box of Penley Flat Toothpicks and one box of Penley Assorted Cutlery).  On each of the three occasions the El Morro employee was Karol Rodriguez, who had worked at El Morro for a little more than a week.  As of March 2006, El Morro had not

---

[1] The Program was created by the Food Stamp Act, *see* 7 U.S.C. §§ 2011-2036, and is administered by the USDA's Food and Nutrition Service (the "FNS"), *see* 7 C.F.R. § 271.3. According to the Food Stamp Act, food stamp benefits can only be redeemed at retail food stores that FNS has approved to participate in the Program.  *See* 7 U.S.C. § 2013.

[2] As the Court will more fully address below, an authorized Food Stamp Program retail store is allowed to accept food stamp benefits only for "eligible food." 7 U.S.C. § 2013(a); 7 C.F.R. § 278.2(a).  "Eligible food" is "[a]ny food or food product intended for human consumption." 7 C.F.R. § 721.2.

2

committed any other FNS violations besides the three at issue here. Ms. Rodriguez left El Morro's employ soon after these transactions, for reasons undisclosed by Plaintiff.

Months prior to Mr. Thomas' transactions, in September 2005, Mr. Ramirez had purchased a computer program capable of sorting eligble food items from ineligble nonfood items. Mr. Ramirez believed this system to be operational at the time Mr. Thomas made the purchases. In fact, the system was not operational until April 2006.

Further, El Morro had in place a training program for all new cashiers, which included a new cashier being supervised by an experienced cashier for the first week of employment. Ms. Rodriguez received such training, which also included information on the Food Stamp Act. In the course of her cashier training Ms. Rodriguez was told that El Morro's computer system designed to sort eligible from ineligible items was up and running, when in fact it was not functional until April 2006.

FNS notified Mr. Ramirez of its investigation with a letter dated May 4, 2006. This letter listed the three transactions described above which it considered to be violations of the Food Stamp Act, explained the potential penalties for such violations, and offered Mr. Ramirez a chance to respond to the charges. *See* Def.'s Ex. 12. Mr. Ramirez' attorney at the time drafted a letter in response dated May 12, 2006, explaining the circumstances of the violations (without challenging that they occurred) and offering arguments as to why El Morro should be subjected only to "a minimal type of civil penalty." *See* Def.'s Ex. 13. On June 5, 2006 FNS notified Mr. Ramirez that, on the basis of the evidence, the agency found the charged violations had occurred at El Morro and that it planned to disqualify El Morro from the Program for a period of six months. *See* Def.'s Ex. 15. On June 9, 2006 Mr. Ramirez requested review of that decision, and FNS granted this request on June 27, 2006. Following this review, FNS issued a Final Agency Decision on September 13, 2007 disqualifying El Morro from participating in the Program for six months. *See* Def.'s Ex. 18.

Plaintiff subsequently brought this action for judicial review of FNS' final decision to disqualify El Morro from participating in the Program for six months. In its answer to the Complaint, Defendant raised a Counterclaim against Plaintiff under the False Claims Act, 31 U.S.C. § 3729, *et al*. However, on the final day of trial, Defendant orally withdrew its Counterclaim.

**STANDARD OF REVIEW**

A court reviews an administrative disqualification to participate in the Food Stamp Program *de novo*. 7 U.S.C. § 2023(15). However, once a court determines through *de novo* review that the plaintiff did commit the alleged violations of the Food Stamp Act, the court reviews the level of discipline imposed by FNS under the arbitrary and capricious standard. *Bruno's, Inc. v. U.S.*, 624 F.2d 592, 594 (5th Cir. 1980); *Carlson v. U.S.*, 879 F.2d 261, 263 (7th Cir. 1989) ("[A] penalty [relating to the Food Stamp Program] may be set aside only if arbitrary and capricious . . . . The deference courts give to the penalty does not apply to the finding that a violation occurred. The district court must determine the validity of the agency's factual determinations anew, on a fresh record.") (internal quotation and citation omitted).[3] "To be 'valid' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." *Bruno's*, 624 F.2d at 594 (internal quotation and citation omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotation and citation omitted).

**CONCLUSIONS OF LAW**

Here, in reviewing the agency's decision to disqualify El Morro from the Program for six months, the Court must make two determinations: (1) Did El Morro commit the alleged violations of the Food Stamp Act? and (2) Is the six month disqualification penalty "valid," that is, not arbitrary and capricious? *Bruno's*, 624 F.2d at 594.

As to the first inquiry, there is no question that El Morro committed three violations of the Food Stamp Act. In the course of the trial Mr. Ramirez stipulated to the occurrence of the three transactions alleged by FNS, each of which included the purchase of three nonfood items with food

---

[3] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit . . . .").

stamp benefits. All three transactions are also detailed in Plaintiff's Proposed Findings of Fact. *See* D.E. #34. These transactions violated the Food Stamp Act because the nonfood items were ineligible to be purchased using food stamp benefits. An authorized Food Stamp Program retail store is allowed to accept food stamps only for "eligible food." 7 U.S.C. § 2013(a); 7 C.F.R. § 278.2(a). "Eligible food" is "[a]ny food or food product intended for human consumption." 7 C.F.R. § 721.2. Here, the nonfood items purchased by Mr. Thomas with food stamp benefits included plastic oven bags, toothpicks, coffee filters, and plastic cutlery, items which are plainly not food intended for human consumption. These items are considered "common ineligible items" as that term is defined by the USDA's Food and Consumer Service Handbook 318, Chapter 10, Section 1021.A.2.a.(2) ("FCS Handbook"). *See* Def.'s Ex. 2. According to the FCS Handbook, which sets out USDA policies and procedures in this area, "common ineligible items" are "easily identifiable ineligible items of low cost, such as cleaning products, paper products, and other common household items," which certainly includes the nonfood items purchased at El Morro. Thus, the Court finds that El Morro did commit three violations of the Food Stamp Act by allowing nonfood items to be purchased using food stamp benefits.

As to the second inquiry, the Court finds that FNS' decision to disqualify Plaintiff from participating in the Program for six months was not arbitrary and capricious. According to 7 U.S.C. § 2021(a), any food store authorized to participate in the Food Stamp Program

> may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

Section 2021(b) requires that such disqualification for a violation of the Food Stamp Act "shall be . . . for a reasonable period of time, of <u>no less than six months</u> . . . upon the first occasion of disqualification." 7 U.S.C. § 2021(b)(1) (emphasis added). USDA regulations flesh out this statutory scheme. According to 7 C.F.R. § 278.6(a), FNS may disqualify any authorized retail food

store from further participation in the Program if it fails to comply with the Food Stamp Act, and 7 C.F.R. § 278.6(e) provides that FNS "shall" take the following action "against any firm determined to have violated the Act or regulations" -

> (5) Disqualify the firm for 6 months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management. . . .
>
> (7) Send the firm a warning letter if violations are too limited to warrant a disqualification.

USDA regulations also flesh out the "hardship" exception laid out in 7 U.S.C. § 2021(a). According to 7 C.F.R. § 278.6(a) FNS may impose a fine "for each violation if FNS determines that a disqualification would cause hardship to participating households." As for the criteria for imposing a fine in lieu of other penalties,

> FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.

7 C.F.R. § 278.6(f)(1).

Summarizing this statutory and regulatory scheme, when a firm violates the Food Stamp Act it will either be sent a warning letter if the violation is minor, or disqualified from participating in the Program for a minimum of six months. This holds true unless the "hardship" exception applies, and disqualifying the firm would cause hardship to customers using food stamps because of the lack of comparable firms accepting food stamps in the area - in such case, the firm would be eligible to pay a civil fine in lieu of other discipline.

Here, FNS determined that the hardship exception was not available to El Morro. After FNS uncovered the violations, on or about May 23, 2006, FNS investigator Cheryl Jefferson canvassed the area surrounding El Morro and determined that there were other four retail food

stores authorized to accept food stamp benefits in the area selling as large a variety of staple food items at comparable prices. In its Final Agency Determination FNS ultimately declined to levy a civil fine instead of impose other discipline, based on its finding that there were four other stores comparable to El Morro in the area. *See* Def.'s Ex. 18 at 4. Plaintiff agrees that there were four grocery stores accepting food stamps within a mile of El Morro, but claims that FNS never evaluated whether those four stores offered their products at comparable prices.

The Court agrees with FNS that El Morro was not entitled to pay a civil fine in lieu of other discipline. FNS' conclusion that disqualifying El Morro from participating in the Program for six months would not cause hardship to food stamp households is well supported by the evidence. There were at least four retail food stores authorized to accept food stamps within one mile from El Morro. *See* Def.'s Ex. 14.[4] FNS reviewed each of these stores and drew up reports assessing their hours of operation, layout and facilities, and the range of their services and products, *see* Def.'s Ex. 3-6, and ultimately determined that because of the close proximity of these similar stores, El Morro's disqualification would not cause hardship to local food stamp households, *see* Def.'s Ex. 18 at 4. The Court agrees with this conclusion, given the close proximity of the four stores investigated and the similarity of the products they offer for sale. Further, although FNS did not make a specific finding that these nearby stores offered comparable *prices* for their products, the Court finds it was not unreasonable for FNS to assume that the surrounding stores' prices were comparable to El Morro's given that those stores competed in the same market as El Morro and featured similar products.

Given that the hardship exception did not apply to this case, FNS only had two options for disciplining El Morro: to suspend the store from participating in the Food Stamp Program for six

---

[4] These stores are: The Father & Son Supermarket, located at 2303 N.W. 7th Street, Miami, Florida (approximately 0.30 miles from El Morro); Julie's Grocery Corp., located at 1844 N.W. 3rd Street, Miami, Florida (approximately 0.62 miles from El Morro); Riviera Supermarket, located at 1710 N.W. 17th Avenue, Miami, Florida (approximately 0.72 miles from El Morro); and Tropical's Supermarket, located at 2294 W. Flagler Street, Miami, Florida (approximately 0.77 miles from El Morro).

months pursuant to 7 C.F.R. § 278.6(e)(5), or to send a warning letter pursuant to 7 C.F.R. § 278.6(e)(7). Thus, the question for the Court is whether FNS' decision to suspend El Morro rather than send a warning letter was arbitrary and capricious.

According to 7 C.F.R. § 278.6(d), in making its disqualification or penalty determination FNS "shall consider: (1) the nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations." Further, the FCS Handbook states that FNS is to impose a six month disqualification "if the firm has had no previous sanction, and the evidence indicates that the firm has committed violations such as the sale of common ineligible items in at least three transactions due to carelessness or poor supervision." FCS Handbook, Chapter 10, Section 1022.G.1. The FCS Handbook defines "carelessness" as "[t]he sale of a total of three inexpensive nonfood items over one, two or three transactions, meaning that the owner or management was not thorough in supervising personnel of the firm."

Here, in making its determination to disqualify El Morro for six moths, FNS considered the scope of and nature of the violations: namely, that an El Morro cashier allowed Mr. Thomas to purchase three common nonfood items with food stamp benefits, on three separate occasions in the space of one week. FNS did not consider any prior action by FNS to warn El Morro, as FNS has not taken any such action in this case.[5] FNS did consider evidence of El Morro's "intent" with respect to the violations - in its Final Agency Action, FNS went through Mr. Ramirez' arguments and explanations for why El Morro should not be disqualified from the Food Stamp Program in some detail. For example, FNS considered that Mr. Ramirez had purchased a computer program designed to prevent ineligible items from being charged to food stamps. However, FNS noted that the system was not operational at the time of the violations, and that if the El Morro employee had

---

[5] Of course, such warnings are not required before FNS imposes a disqualification. *See, e.g., Phany v. Poeng*, F. Supp. 2d 1136, 1140 (S.D. Cal. 2001) ("The regulatiosns do not require written notice prior to disqualification [from the Food Stamp Program].").

8

been trained correctly she would not have committed them. FNS considered that El Morro had never been disciplined before for violating the Food Stamp Act, but noted that this fact alone did not constitute grounds for dismissal or mitigation of the charges.[6]

Considering the Final Agency Action report and the testimony of Ms. Jefferson at trial, the Court holds that FNS' decision to impose a six month disqualification on El Morro rather than to send a warning letter was not arbitrary and capricious such that it was "unwarranted in law or without justification in fact." *Bruno's*, 624 F.2d at 594 (internal quotation and citation omitted). The three violations at issue here fit squarely within the FCS Handbook definition of "carelessness" as "[t]he sale of a total of three inexpensive nonfood items over one, two or three transactions, meaning that the owner or management was not thorough in supervising personnel of the firm." It was not arbitrary and capricious to infer carelessness from the fact that an El Morro clerk allowed Mr. Thomas to purchase three common nonfood items within the space of one week - such facts do support the inference that Mr. Ramirez was careless in training his cashier. While Mr. Ramirez did purchase a computer program to distinguish between eligible and ineligible items, he was not aware that the program was not functioning properly from the time of its purchase in September 2005 until April 2006 - again, this fact supports an inference of carelessness. Even crediting Mr. Ramirez' testimony that he ensures all new cashiers receive a week of training and are given instruction on the Food Stamp Act, it is rational to infer that such training was inadequate when the same clerk allowed three ineligible nonfood items to be purchased on three occasions within one week. Further, although the evidence shows the El Morro clerk in question left the store's employ soon after the violations, there is no evidence that she was terminated *because* of those violations.[7]

---

[6] FNS also considered Mr. Ramirez' other arguments against a disqualification, such as that the cashier who committed the violations had worked at El Morro for only a short period of time and that she was no longer employed there, and that the total value of the ineligible items purchased was low - only $11.21. FNS ultimately rejected these arguments as not supporting dismissal of the charges or mitigation of the penalty.

[7] *See*, *e.g., In Suk Pak v. U.S.*, 690 F. Supp. 322 (M.D. Pa. 1987) (finding a "rational connection" between FNS' decision to disqualify store for three years where, among other

FNS' determination of carelessness is bolstered by another issue. Items eligible to be purchased with food stamps cannot be taxed. *See* 7 U.S.C. § 2013(a); 7 C.F.R. § 278.2(b). During trial, it became clear that the portion of the computer program designed to ensure that sales tax was not charged to eligible food stamp items was functional at the time of the violations. This fact strengthens FNS' decision to impose a disqualification based on carelessness - had the El Morro cashier been trained properly, she likely would have noticed that taxable items were being purchased with food stamps.

## CONCLUSION

In sum, there is a "rational connection" between the facts of this case and the level of discipline imposed by FNS. While the Court does not necessarily *agree* with the level of discipline imposed by FNS, the Court is only charged with determining whether that level of discipline was arbitrary and capricious. Because the evidence shows that FNS' decision to disqualify El Morro from the Food Stamp Program for six months rather than sending him a warning letter was not arbitrary and capricious, the Court must uphold it. Final judgment will be entered accordingly.

DONE in Chambers, Miami, Florida, February 29, 2008.

_____

Copies furnished to:                    PAUL C. HUCK
All Counsel of Record                   UNITED STATES DISTRICT JUDGE

---

factors, the store's employees accepted food stamps for every ineligible nonfood item the investigator attempted to purchase on four visits, the hardship exception did not apply, and there was no evidence that the store's owner extensively trained his clerks in food stamp regulations); *Phany*, F. Supp. 2d 1136 (upholding six month disqualification where, among other factors, store employees committed violations on five occasions, the hardship exception did not apply, the plaintiff "fail[ed] to provide evidence that he provided adequate training," and there was "no evidence that Plaintiff terminated [the] recalcitrant employees [who allowed the improper purchases] upon discovery of their wrongdoing").